UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA CHEUNG | No. 2:14-cv-02087-MCE |
| Appellant, | |
| v. | **MEMORANDUM AND ORDER** |
| TAL S. FLETCHER, TRUCKEE TAHOE TRANSPORTATION, INC., | |
| Appellee. | |

Appellant Cheung ("Cheung") appeals the Bankruptcy Court's judgment in favor of Appellee Fletcher ("Fletcher"). The Bankruptcy Court held that Cheung's debt to Fletcher was nondischargable under 11 U.S.C. §§ 727(a)(2)(A) and 727(a)(4)(A). For the reasons set forth below, this Court affirms the Bankruptcy Court's decision.[1]

///
///
///
///
///

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

1

# BACKGROUND[2]

Fletcher owned Truckee Tahoe Transportation, Inc. ("TTT") which operated a private car service in the Truckee, Tahoe and Reno areas. In 2011, Cheung agreed to purchase a 50% interest in TTT. She paid Fletcher $50,000 cash over several months and executed a $50,000 promissory note in favor of Fletcher. Cheung and Fletcher agreed that Cheung would manage TTT, and Fletcher would take an advisory role and drive on some of the trips. After a dispute arose between Cheung and Fletcher, however, they agreed to go their separate ways. By that point, Cheung had made $30,000 of her required initial payment. On November 6, 2012, Cheung and Fletcher agreed to dissolve TTT and distribute its assets and liabilities between them, but the dissolution and distribution were never completed. On November 14, 2012, Cheung and Gubitosi, a new business partner, incorporated Tahoe Elite Private Car Services, Inc. ("Tahoe Elite").[3]

On November 27, 2012, Cheung filed a Chapter 7 bankruptcy petition. On December 27, 2012, the Debtor's initial 341 meeting was held. A continued hearing was held on January 7, 2013. On the basis of Cheung's petition, the Chapter 7 Trustee Thomas Aceituno issued its finding that "there is no property available for distribution from the estate over and above that exempted by law." Fletcher did not object to the trustee's finding within the thirty day period provided by Rule 5009(a) of the Federal Rules of Bankruptcy Procedure.

On February 24, 2013, Fletcher filed an adversary complaint objecting to any discharge for Cheung under § 727. The adversary complaint alleges that Cheung fraudulently failed to disclose the following: (1) Cheung's ownership interest in Tahoe Elite; (2) Cheung's property as a result of the dissolution of TTT (the TTT telephone

---

[2] Unless otherwise specified, the factual assertions in this section are based on the allegations in Cheung's Opening Brief. See Appellant's Opening Br., Aug. 13, 2015, ECF No. 9 at 2-5.

[3] This factual assertion is based on the allegation in Fletcher's Brief. See Appellee's Br., Aug. 28, 2015, ECF No. 10 at

number, the TTT corporate goodwill, and a 2007 Yukon vehicle); and (3) her 50% interest in TTT.  On August 4, 2014, the Bankruptcy Court entered judgment holding that Cheung's debt to Fletcher was nondischargable under 11 U.S.C. §§ 727(a)(2)(A) and 727(a)(4)(A).  On August 19, 2014, Cheung filed a Notice of Appeal.

## STANDARD

An appellant may petition the district court for review of a bankruptcy court's decision.  Fed. R. Bankr. P. 8013.  The applicable standard of review is identical to that which circuit courts of appeal apply when reviewing district court decisions.  See In re Baroff, 105 F.3d 439, 441 (9th Cir. 1997).  Accordingly, this Court reviews the bankruptcy court's findings of fact for clear error, but reviews conclusions of law and mixed questions of law and fact de novo.  In re Hamada, 291 F.3d 645, 649 (9th Cir. 2002).  A court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record.  United States v. Hinkson, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009).  The question of whether a claim is nondischargeable presents mixed issues of law and fact and is reviewed de novo.  Id.  A de novo review is an independent review in which the reviewing court does not give any deference to the decision of the lower court.  Preblich v. Battley, 181 F.3d 1048, 1051 (9th Cir. 1999).

## ANALYSIS

Cheung argues that the Bankruptcy Court erred in denying her discharge because: (1) no evidence supports that she concealed her assets under § 727(a)(2)(A); (2) no evidence supports that Cheung knowingly and fraudulently failed to disclose the value of the TTT telephone number, goodwill, and the 2007 Yukon under § 727(a)(4)(A); and (3) Cheung reasonably relied on the Liquidation Proposal to assign zero valuation to TTT.

**A.  11 U.S.C. § 727(a)(2)(A)**

A discharge may be denied if it is demonstrated that:

> the debtor, with intent to hinder, delay or defraud a creditor has transferred, removed, destroyed, mutilated, or concealed property of the debtor, within one year before the date of the filing of the petition.

11 U.S.C. § 727(a)(2)(A).

The Bankruptcy Court correctly found that Cheung transferred the TTT telephone number, the customer information of TTT, and the 2007 Yukon to Elite Tahoe within one year before the filing of the petition. The remaining issue is whether the transfer was accompanied by "intent to hinder, delay or defraud" Fletcher. 11 U.S.C. § 727(a)(2)(A). Whether Cheung harbored intent to hinder, or delay, or defraud Fletcher is a question of fact reviewed for clear error. See In re Woodfield, 978 F.2d 516, 518 (9th Cir. 1992); see also In re Beverly, 374 B.R. 221, 243 (9th Cir. 2007).

Intent may be inferred from surrounding circumstances. In re Woodfield, 978 F.2d at 518. The surrounding circumstances include the various "badges of fraud" that constitute circumstantial evidence of intent. Id. Intent may also be established by inferences drawn from a course of conduct. See In re Adeeb, 787 F.2d 1339, 1343 (9th Cir. 1986).

As applied to Cheung's transfer of the TTT telephone number, the TTT customer information, and the 2007 Yukon to Tahoe Elite, the Bankruptcy Court relied on circumstantial evidence and course of conduct to establish Cheung's intent to hinder, delay or defraud Fletcher. First, with respect to the TTT telephone number, the Bankruptcy Court properly concluded that the TTT telephone number was an asset of substantial value. Fletcher had used the same number to build his customer base in Tahoe and Truckee for private car service. The Bankruptcy Court also found that people in Tahoe and Truckee were accustomed to calling this number to arrange transportation. ECF No. 6-1, at 199. Second, with respect to the TTT customer information, the Bankruptcy Court also concluded that given the personal services nature of the

1  business, the customer information that Fletcher had established for a decade had
2  substantial value. Finally, with regard to the 2007 Yukon, the Bankruptcy Court held that
3  the transfer of the 2007 Yukon should have been documented in the filling because it
4  was property of the bankruptcy estate before the agreement to dissolve.
5       Particularly when coupled with the substantial value of these assets, the new
6  business relationship between Cheung and Gubitosi supports by a preponderance of
7  evidence that Tahoe Elite was created to transfer assets to hinder or delay Fletcher in
8  collecting the remaining value owed from the purchase of TTT.  See In re Khalil,
9  370 B.R. 163, 172 (9th Cir. BAP 2007) ("those objecting to discharge bear the burden of
10 proving by a preponderance of the evidence that [the debtor's] discharge should be
11 denied").  Such factual determination is neither illogical, implausible nor without support
12 in the record.  See Hinkson, 585 F.3d at 1261-62 & n. 21.  Further, Cheung has shown
13 no error in these findings or the bankruptcy court's application of the law.  The Judgment
14 denying her discharge under § 727(a)(2)(A) is AFFIRMED.

15       **B.  11 U.S.C. § 727(a)(4)(A)**
16       Section 727(a)(4)(A) denies a discharge to a debtor who knowingly and
17 fraudulently makes a false oath in the course of the bankruptcy proceedings.  In order to
18 bring a successful § 727(a)(4)(A) claim for false oath, the plaintiff must show: (1) debtor
19 made a false oath in connection with the case; (2) the oath related to a material fact;
20 (3) the oath was made knowingly; and (4) the oath was made fraudulently.  See In re
21 Roberts, 331 B.R. 876, 882 (9th Cir. 2005).  A claim for denial of a discharge under
22 § 727 is construed liberally in favor of the discharge and strictly against a person
23 objecting to the discharge.  In re Adeeb, 787 F.2d at 1324.  The Bankruptcy Court's
24 finding that Cheung knowingly made a false oath in her bankruptcy case is reviewed for
25 clear error.  See In re Beauchamp, 236 B.R. 727, 729 (9th Cir. BAP 1999).
26 ///
27 ///
28 ///

**1. The TTT telephone number, the TTT goodwill, and the 2007 Yukon**

A false oath may involve a false statement or omission in the debtor's schedules. See In re Khalil, 379 B.R. 163, 172 (9th Cir. 2007). "A false statement is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." In re Wills, 243 B.R. at 62. The Bankruptcy Court was not clearly erroneous in determining that Cheung's omission on the Schedules constitutes a false oath regarding a material fact. ECF No. 6-1, at 202. The TTT telephone number, the customer information and the 2007 Yukon bear a direct relationship to Cheung's daily operations of Tahoe Elite. In fact, Cheung used them to operate Tahoe Elite before the dissolution of TTT was completed.

Additionally, the Bankruptcy Court was not clearly erroneous in determining that Cheung knowingly failed to make these disclosures. A debtor "acts knowingly if she acts deliberately and consciously." See In re Khalil, 379 B.R. at 173. In defense of her lack of knowledge, Cheung argues that the Liquidation Proposal did not specifically value the telephone number, and she was not aware of the value of the goodwill. The Bankruptcy Court, however, found that Cheung's decade-long experience as a sale agent and her retention of counsel to assist her through the bankruptcy process, a preponderance of the evidence supported a finding that she acted knowingly. ECF No. 6-1, at 202. Also, Cheung admitted during trial that she chose to keep the telephone number instead of the website because Gubitosi informed her of the value of the telephone number. ECF No. 10 at 8.

Finally, the Bankruptcy Court was not clearly erroneous in finding that Cheung made a false oath fraudulently. The fraud provision of § 727(a)(4) is similar to common law fraud. See In re Anastas, 94 F.3d 1280, 1284 (9th Cir. 1996). A false oath is made fraudulently when the (1) debtor makes an omission; (2) that at the time she knew was

///

false; and (3) with the intention and purpose of deceiving creditors.  See In re Khalil, 379 B.R. at 173.

A debtor's fraudulent intent may also be established by circumstantial evidence or by inferences drawn from her course of conduct.  See e.g., In re Devers, 759 F.2d 751, 753 (9th Cir. 1985).  In examining the circumstances, the court may find "badges of fraud" including: (1) that there was a close relationship between the transferor and the transferee; (2) that the transfer was in anticipation of a pending suit; (3) that the transferor debtor was insolvent or in poor financial condition at the time of the transfer; (4) that all or substantially all of the debtor's property was transferred; (5) that the transfer so completely depleted the debtor's assets that the creditor has been hindered or delayed in recovering any part of the judgment; and (6) that the debtor received inadequate consideration for the transfer.  See In re Woodfield, 978 F.2d at 518; see also In re Roberts, 331 B.R. at 885.  These factors need not all be present in order to find that a debtor acted with the requisite intent.  Id.

Here, the Bankruptcy Court relied on circumstantial evidence to conclude by a preponderance of evidence that Cheung fraudulently made a false oath.  In filing bankruptcy, Cheung operated under her counsel's advice to hide her ownership of the assets.  Cheung was also working closely with Gubitosi who claimed to be her "ultimate financial backstop."  ECF No. 6-1, at 63.  Further, multiple omissions such as the TTT telephone number, the customer list and the 2007 Yukon may support an inference of fraud because the valuable nature of the assets suggests that Cheung was aware of them at the time of preparing the Schedule.  See In re Khalil, 379 B.R. at 175 (multiple omissions of material assets may supports an inference of fraud).  Further, the substantial value of the assets in question suggests that Cheung may have wanted to conceal them.  Id. (omissions may support an inference of fraud if the substantial value of the assets is such that a debtor might want to conceal).  Additionally, Cheung has shown no error in the Bankruptcy Court's reliance on these inferences.

///

**2. The TTT interest**

The Bankruptcy Court was not clearly erroneous in finding that Cheung knowingly and fraudulently assigned a value of zero to her 50% interest in TTT. First, the Bankruptcy Court was not clearly erroneous in finding that Cheung made a false oath regarding the value of her interest. See In re Khalil, 379 B.R. at 172 ("a false statement in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath"). Second, the Bankruptcy Court was not clearly erroneous in finding that omission of her 50% interest in TTT was material. Cheung's 50% interest in TTT is certainly a relevant factor to consider in attempting to understand her financial affairs. See also In re Hoblitzell, 223 B.R. at 216 (a disclosure's materiality is determined by whether "it aids in understanding the debtor's financial affairs and transactions"). Third, the Bankruptcy Court correctly found that Cheung knowingly made a false oath.

In advocating a different conclusion, Cheung argues that she valued her interest in TTT at zero because TTT was insolvent. The Bankruptcy Court rejected Cheung's argument because although "dividends to shareholders were not being paid, they were being compensated in other ways from the assets of TTT." ECF No. 6-1, at 197. Considering that TTT was a closed corporation with only two shareholders, the Bankruptcy Court rejected Cheung's claim of TTT's insolvency. Additionally, Cheung's decade of experience as a sale agent, the business relationship she embarked in with Gubitosi, and the fact she was receiving advice from bankruptcy counsel all point to the inescapable conclusion that Cheung knew TTT had a value greater than zero. She also admitted that TTT's goodwill value "could easily have been $20,000 or $30,000" when Cheung filed her petition in November 2012. ECF No. 10 at 10.

Lastly, the Bankruptcy Court did not clearly err when it found that Cheung made the false oath fraudulently. Cheung's course of conduct and pattern of action demonstrate her fraudulent intent for purposes of § 727(a)(4)(A). The Bankruptcy Court found that "the statement that TTT had no value is way too cavalier given the fact that

8

both of the operators continued to operate in business and with customers and customer lists." ECF No. 6-1, at 202.  Further, the Bankruptcy Court pointed to Cheung's reliance on counsel to conclude by a preponderance of evidence that Cheung "was playing so close to the line in an effort to hide, that it is actually over the line." Id.  Such factual determination was neither illogical, implausible nor without support in the record.  See Hinkson, 585 F.3d at 1261-62 & n.21.  Accordingly, the Court affirms the denial of Cheung's discharge under § 727(a)(4)(A).

## CONCLUSION

Based on all of the foregoing, the decision of the Bankruptcy Court is hereby AFFIRMED.

IT IS SO ORDERED.

Dated:  March 15, 2016

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT